**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:22-cv-00013-RMR-STV

ANDREW GARLICK, et al.,

      Plaintiffs,

v.

THE REGENTS OF THE UNIVERSITY OF COLORADO, et al.,

      Defendants.

---

**ORDER**

---

    This matter is before the Court on its Order to Show Cause, ECF No. 43, in which the Court directed Plaintiffs to show cause in writing why this case should not be dismissed for lack of jurisdiction.  For the reasons stated below, the Order to Show Cause is MADE ABSOLUTE, and this case is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

## I.     BACKGROUND

### A.    Factual Background

    Plaintiffs Andrew Garlick and Rebekah Voelkelt, students at the University of Colorado Denver ("UCD") and Plaintiff Dr. Thomas Fow, a student at the University of Colorado's Anschutz Medical Campus ("Anschutz"), filed the Complaint in this case, alleging that the policies that the University implemented at UCD and Anschutz requiring students to receive vaccination against COVID-19 are unconstitutional, and seeking to

enjoining the University from enforcing the policies, along with other injunctive relief.  ECF No. 1.  At the time that the Complaint was filed,[1] Mr. Garlick was a junior at UCD who had a religious objection to receiving the COVID-19 vaccine.  He applied for and received a religious exemption to UCD's vaccine requirement, and he was taking classes remotely.  Ms. Voelkelt was a junior at UCD who also had a religious objection to receiving the COVID-19 vaccine but who did not ask for a religious exemption under UCD's policy.  Instead, she chose to withdraw from classes in August of 2021 and declined to re-enroll for classes in the spring of 2022.  On April 15, 2022, Plaintiffs filed a Notice of Plaintiff Status Change, indicating that "Plaintiff Rebekah Voelkelt plans to withdraw from CU Denver and attend a different school, as she cannot wait for CU to change its policy and therefore needs to go elsewhere to complete her degree."[2]  ECF No. 51 at 1; ECF No. 51-1 ¶ 3.

Finally, Dr. Fow is a licensed dentist and was a graduate student in the periodontics program at Anschutz at the time the Complaint was filed.  He had a religious objection to receiving the COVID-19 vaccine and applied for, but did not receive, a religious exemption under Anschutz's policy.  He was unwillingly unenrolled from his program, but he alleges that it is unclear if he was terminated or placed on a one-year personal leave.  Through this action, Plaintiffs request that the Court declare the policies to be unconstitutional;

---

[1] "The existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed.*"  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (quoting *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989)) (emphasis in original) (also referring to "our longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed").

[2] *But see supra* note 1.

enjoin the University from enforcing the policies; and grant other injunctive and declaratory relief.  *See* ECF No. 1 ¶¶ 360–65.

### 1.    UCD Policy

UCD implemented a policy requiring its students to "submit verification of COVID-19 vaccination by the start of classes August 23, 2021 through a campus-wide platform." ECF No. 38-22 (Def. Ex. V, UCD Policy) at 1.[3]  Under the policy, "[i]ndividuals may be exempted from the requirement to receive a COVID-19 vaccine for medical, religious, or personal reasons.  Individuals will automatically receive an exemption if submitted through the campus-wide vaccine verification portal."  *Id.* at 2.  Further, "[i]ndividuals who do not provide proof of vaccination will be considered as having submitted a personal exemption and required to follow the additional safety protocols."  *Id.* at 1–2.

The safety protocols for unvaccinated individuals included "wearing masks, social distancing, staying home and self-reporting when sick, quarantining in accordance with up-to-date campus policy and Centers for Disease Control ('CDC') guidance, submitting daily health attestations, and undergoing frequent asymptomatic testing."  *Id.* at 2. However, UCD recently lifted the masking requirement.[4]  *See* ECF No. 47 at 3, 3 n.7 (citing *Wearing Masks at CU Denver To Be Optional Beginning March 7*, Univ. Colo. Denver                           (Feb.                           28,                           2022),

---

[3] "When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Here, there are some factual disputes, such as whether students are required to report their vaccination status to UCD, *see infra* Section III.B.  Therefore, the Court considers materials outside of the Complaint to assess whether Plaintiffs have standing here.

[4] *But see supra* note 1.

https://www.ucdenver.edu/coronavirus/updates/messages/wearing-masks-at-cu-denver-to-be-optional-beginning-march-7).   Under the original policy, "i]ndividuals who are required to submit to ongoing asymptomatic testing will be required to do so on a weekly basis, but the frequency of testing is subject to change based on evolving medical and scientific recommendations."  ECF No. 38-22 at 2 n.2.

### 2.   Anschutz Policy

On September 1, 2021, Anschutz implemented a policy mandating vaccination against COVID-19 for "all students, faculty, and staff," and "permitting medical and religious exemptions for employees and students."  ECF No. 38-5 (Def. Ex. E, Declaration of Anschutz Chancellor Donald "Don" M. Elliman, Jr.) ¶ 9.  On September 24, 2021, "[a]s infections and hospitalizations sharply rose in September 2021," the policy was revised to "require all employees and students to be fully vaccinated against COVID-19 with no exceptions other than those required by federal statute."  *Id.* ¶ 10; *see also* ECF No. 38-12 (Def. Ex. L, Amended Anschutz Policy).

The amended policy was implemented consistent with the Colorado Board of Health's rule requiring staff in healthcare facilities, including students and trainees, to be vaccinated against COVID-19, *see* 6 Colo. Code Regs. §§ 1011-1:2-12.2.1, 12.2.2(A), as well as the federal Department of Health and Human Services' ("DHHS's") interim final rule regarding vaccination against COVID-19 (the "DHHS Vaccine Mandate").  The DHHS Vaccine Mandate requires as a condition of receiving Medicare and Medicaid funding (which Anschutz accepts, *see* ECF No. 38 at 20) that hospitals must ensure all "hospital staff, who provide any care, treatment, or other services for the hospital and/or its

patients," including students, are fully vaccinated against COVID-19.   42 C.F.R. § 482.42(g)(1)(iii); 86 Fed. Reg. 61555–61619 (2021).  The DHHS Vaccine Mandate also requires facilities to include a process "by which staff may request an exemption from the staff COVID-19 vaccination requirements based on an applicable Federal law."  42 C.F.R. § 482.42(g)(3)(vi).  The Supreme Court upheld the DHHS Vaccine Mandate in *Biden v. Missouri*, 142 S. Ct. 647, 653 (2022), holding that "the Secretary [of Health and Human Services] did not exceed his statutory authority in requiring that, in order to remain eligible for Medicare and Medicaid dollars, the facilities covered by the interim rule must ensure that their employees be vaccinated against COVID-19."

The Anschutz policy, as amended on September 24, 2021 ("Amended Anschutz Policy"), requires all individuals "who are, or may access any University facility or participate in any University program, or whose employment or academic activities may require in-person interaction with other CU Anschutz employees, students, patients, [etc.] . . . , must be fully vaccinated against COVID-19 unless they have received an approved medical or religious accommodation."  ECF No. 38-12 (Def. Ex. L) at 2.  The Amended Anschutz Policy provides for religious and medical accommodations for employees, but "[r]eligious accommodations are not currently available to students."  *Id.* Defendants point out that Title VII requires religious accommodations for employees only, but it does not apply to students.  *See* 42 U.S.C. § 2000e-2(a)–(b); ECF No. 47 at 7, 7 n.11; ECF No. 38-5 (Def. Ex. E) ¶ 11; *see also* 42 C.F.R. § 482.42(g)(3)(vi) (the DHHS Vaccine Mandate, only requiring facilities to provide a process to "request an exemption . . . based on **an applicable Federal law**") (emphasis added).

The Amended Anschutz Policy further provides that "[i]ndividuals who are not vaccinated and do not have an approved medical or religious accommodation, will not be allowed to access University facilities or programs in person."  ECF No. 38-12 (Def. Ex. L) at 4.  Also, "[u]nvaccinated students who fail to submit verification of vaccination or comply with required safety protocols for accommodated individuals may be referred to their respective School/College/program for potential action and/or discipline, up to and including termination from the program."  *Id.*

On February 18, 2022, Anschutz announced updates to its COVID-19 vaccination policy that would be effective February 28, 2022.[5]  ECF No. 47-1 ¶ 13; *see also* ECF Nos. 47-2, 47-3.  The updates changed the Policy as follows: 1) booster shots are highly recommended but not required for individuals to be considered vaccinated; 2) individuals who are "fully vaccinated" with a complete primary round of vaccination shots plus a booster shot are not required to wear masks or physically distance on campus outside of the requirements of clinical settings; 3) no one is required to submit daily attestations or health questionnaires.  All other aspects of the Amended Anschutz Policy remain in effect, including the criteria and process for exemptions to the vaccine requirement.  ECF No. 47-1 ¶¶ 13–14, 16.

B.    **Procedural History**

On January 4, 2022, Plaintiffs filed a Complaint against Defendants the Regents of the University of Colorado; Todd Saliman, in his official capacity as President of University of Colorado; Donald M. Elliman, Jr., in his official capacity as Chancellor of

---

[5] *But see supra* note 1.

University of Colorado Anschutz Medical Campus; and Michelle Marks, in her official capacity as Chancellor of University of Colorado Denver.  Specifically, Plaintiffs bring the following claims against the Defendants: (I) the University's policies violate their liberty interests protected by the Fourteenth Amendment, and the University's policies for granting exemptions from the vaccine requirement violate (II) the First Amendment's Establishment Clause, (III) the First Amendment's Free Exercise Clause, and (IV) the Fourteenth Amendment's Equal Protection Clause.  ECF No. 1 ¶¶ 262–359.  In sum, Plaintiffs allege that the University is "trying to indirectly control students' medical treatment choices and religious liberties, which it would not be allowed to do directly—by coercing students to give up their rights to bodily integrity and autonomy, and to medical treatment choice and their religious rights in exchange for the discretionary benefit of matriculating at [the University]."  *Id.* ¶ 264.

On January 11, 2022, Plaintiffs filed a Motion for Preliminary Injunction, ECF No. 30; *see also* ECF No. 6, seeking to enjoin the University's policies.  The parties briefed that motion, and on January 24, 2022, the Court denied it.  ECF No. 42.  The Court found that the Plaintiffs did not show a substantial likelihood of success on the merits of their claims, as required to succeed on a motion for preliminary injunction, *see, e.g.*, *Aposhian v. Barr*, 958 F.3d 969, 978 (10th Cir. 2020), because they were unlikely to overcome jurisdictional hurdles, including standing to sue.  ECF No. 42 at 8–13.  In addition, the Court found that Plaintiffs did not establish that denying the injunction would result in irreparable harm or that the balance of the harms and the public interest weighed in favor of granting the relief sought.  *Id.* at 13–18; *see Aposhian*, 958 F.3d at 978.

Given the jurisdictional issues that were raised in the briefing on the motion for preliminary injunction, the Court issued an Order to Show Cause why this case should not be dismissed for lack of jurisdiction.  ECF No. 43.  Plaintiffs timely filed a brief in response to the Order to Show Cause, ECF No. 45; Defendants filed a Response, ECF No. 47; and Plaintiffs filed a Reply, ECF No. 48.  Plaintiffs also filed a Notice advising the Court of a change in Plaintiff Voelkelt's enrollment plans at UCD, ECF No. 51, addressed further below.  The Order to Show Cause is fully briefed and ripe for review.

## II.    LEGAL STANDARD

Article III of the United States Constitution "limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559 (1992) (citing U.S. Const. art. III, § 2).  The jurisdictional doctrine of standing, like the doctrines of ripeness and mootness, serves to "keep federal courts within their constitutional bounds." *Prison Legal News v. Federal Bureau of Prisons*, 944 F.3d 868, 879 (10th Cir. 2019).  "The constitutional requirements for standing are (1) an injury in fact, (2) a causal connection between the injury and the challenged act, and (3) a likelihood that the injury will be redressed by a favorable decision." *New Mexico v. Department of Interior*, 854 F.3d 1207, 1214–15 (10th Cir. 2017); *see also Lujan*, 504 U.S. at 560–61 ("[T]he irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the

defendant, and not the result of the independent action of some third party not before the court.  Third, it must be likely, as opposed to merely speculative that the injury will be redressed by a favorable decision.") (internal quotations and citation omitted).

"The party invoking federal jurisdiction bears the burden of establishing these elements."  *Lujan*, 504 U.S. at 561.  "Since they are not mere pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Id.*  As stated above, *supra* note 3, "[w]hen reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations.  A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts."  *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Given that there are some factual disputes regarding Plaintiffs' allegations regarding standing, *see infra* Section III., the Court considers materials outside of the Complaint to assess whether Plaintiffs have standing here.

### III.    ANALYSIS

For the reasons stated below, the Court finds that Plaintiffs lack standing to sue, and so the Court lacks jurisdiction over the claims in this case, which therefore must be dismissed without prejudice.  *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216, 1218 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, . . . the dismissal must be without prejudice. . . .   [D]ismissals for lack of jurisdiction should be without prejudice because

the court, having determined that it lacks jurisdiction over the action, is *incapable* of reaching a disposition on the merits of the underlying claims.") (emphasis in original).  The parties have raised additional arguments regarding mootness, ripeness, and Eleventh Amendment immunity; however, because the Court finds that it must dismiss based on its lack of standing, it does not reach these additional arguments.

### A.   Plaintiff Garlick

Plaintiffs allege that UCD students "may request an exemption for religious, medical, or personal reasons."   ECF No. 1 ¶ 32.   Mr. Garlick "objects to taking the Vaccine."   *Id.* ¶ 214.   Therefore, he applied for and received an exemption to UCD's vaccine requirement.   *See* ECF No. 1-7.   As stated above, under the UCD policy, "[i]ndividuals may be exempted from the requirement to receive a COVID-19 vaccine for medical, religious, or personal reasons.   Individuals will automatically receive an exemption if submitted through the campus-wide vaccine verification portal."   ECF No. 38-22 at 2.   However, UCD put in place safety protocols for unvaccinated individuals, including "wearing masks, social distancing, staying home and self-reporting when sick, quarantining in accordance with up-to-date campus policy and Centers for Disease Control ('CDC') guidance, submitting daily health attestations, and undergoing frequent asymptomatic testing."   *Id.* at 2.   Plaintiffs refer to these as the "Extra Requirements" for unvaccinated individuals.   ECF No. 1 ¶¶ 33–34.   However, Plaintiffs acknowledge that "online-only students who are 'never required to visit any CU facility'" are not subject to the Extra Requirements.   *Id.* at 8 n.5.   Mr. Garlick has been taking UCD classes

exclusively online and therefore has not been subject to the Extra Requirements. *See id.* ¶¶ 213, 219–20, 223.

Plaintiffs concede that "[i]f Students were exempted from the vaccine, but did not have to comply with the Extra Requirements, then there would be no injury and no standing." ECF No. 45 at 11–12. Here, Mr. Garlick has both been exempted from the vaccine requirement and does not have to comply with the Extra Requirements because he has selected classes that are online only. Pursuant to Plaintiffs' own statement, he then does not have standing.

However, Plaintiffs then argue that "[b]eing forced to take online classes is also an injury to Mr. Garlick as well. . . . [because it] includes none of the intangible benefits associated with in-person learning." *Id.* at 14. The Complaint alleges that "Mr. Garlick's participation in a fully online program is causing significant harm to him" because he cannot "take advantage of the networking and connections present through participation in on-campus/in-person education at CU," and it is more difficult for him to "keep up with deadlines and absorb material" without "human connection and interaction." ECF No. 1 ¶ 221; *see also id.* ¶¶ 223–24. Finally, he alleges that he "was prevented from taking specific classes he planned to take" because of his online-only participation. *Id.* ¶ 226. Plaintiffs argue that Mr. Garlick has suffered an injury because he was "forced to either get vaccinated, comply with onerous Extra Requirements, or be expelled." ECF No. 45 at 11. Hence, they argue that "Mr. Garlick would face a penalty for getting an exemption." *Id.* at 5. However, Mr. Garlick has neither been required to comply with the Extra Requirements nor been expelled. His only alleged harm is the purported disadvantages

of online, as opposed to in-person learning and the alleged limitation of his course choices due to his participation in online learning.  *See* ECF No. 1 ¶¶ 213–228.

First, Plaintiffs' categorization of the Extra Requirements as a "penalt[y]" appears to refer to their argument that the Extra Requirements impose a burdensome requirement that is analogous to the fine at issue in *Jacobson v. Commonwealth of Mass.*, 197 U.S. 11, 12 (1905), where the Supreme Court substantively reviewed (and rejected) a constitutional challenge to a state statute imposing a fine for failure to receive a smallpox vaccine, implying that the plaintiff there had standing to bring that challenge.  *See* ECF No. 45 at 12–13.  However, in that case, the plaintiff was imprisoned for failure to pay the $5 fine (which Defendant claims amounts to $160 in today's dollars, *see id.* at 12) for failure to receive the smallpox vaccination.  *See Jacobson*, 197 U.S. at 21.  A statute imposing a fine of the equivalent of $160, pursuant to which a non-complying individual was imprisoned, is not analogous to the policy at issue here, where students may receive an automatic exemption from vaccination and either mask and test or enroll in online courses.

Second, in determining whether a party has established an injury in fact, courts assess whether the alleged injury falls within the "zone of interests to be protected . . . by the  . . . constitutional guarantee in question."  *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 475 (1982).  Courts around the country have rejected constitutional challenges to masking and testing requirements similar to those that Mr. Garlick would face as part of the "Extra Requirements" as an alternative to taking online classes.  *See, e.g.*, *Celauro v. Federal Express Ground*, 548

F. Supp. 3d 1034, 1040 (D. Colo. 2021) (Mix, Mag. J., exercising consent jurisdiction) (Plaintiff did not "allege a violation secured by the Constitution and laws of the United States" by challenging Defendant's mask mandate) (internal quotations and citation omitted); *Whitfield v. Cuyahoga Cnty. Pub. Libr. Found.*, No. 1:21 CV 0031, 2021 WL 1964360, at *2 (N.D. Ohio May 17, 2021) ("[T]here is no general constitutional right to wear, or to refuse to wear a face mask in public places. . . .  Wearing a face mask in the time of a global pandemic is a matter of public health.  In fact, other federal courts that have considered the mask requirement have upheld it.") (collecting cases); *Denis v. Ige*, 538 F. Supp. 3d 1063, 1081 (D. Haw. 2021) ("[T]he Mask Mandates are rationally related to a legitimate government purpose."); *W.S. ex rel. Sonderman v. Ragsdale*, 540 F. Supp. 3d 1215, 1218–19 (N.D. Ga. 2021) ("The mask mandate . . . passes constitutional scrutiny."); *see also Klaassen v. Trustees of Ind. Univ.*, 7 F.4th 592, 593 (7th Cir. 2021) (noting that plaintiffs who receive exceptions to the university's vaccination requirement "just need to wear masks and be tested" and that these "requirements . . . are not constitutionally problematic"; also denying a motion for an injunction pending appeal against the university's vaccination policy, noting, given the holding in *Jacobson*, "there can't be a constitutional problem with vaccination against SARS-CoV-2").  This Court agrees and finds that the desire to avoid masking and testing requirements is not within the "zone of interests to be protected . . . by the  . . . constitutional guarantee in question." *Valley Forge Christian Coll.*, 454 U.S. at 475.

Third, Mr. Garlick's alleged harms regarding his inability to network in person while taking online classes or to take certain in-person classes that he may prefer are

speculative and likely not redressable by declaring the UCD policy unconstitutional and enjoining its enforcement.  Plaintiffs assume that if the UCD policy was not in place, UCD in-person classes would have continued and that other individuals would continue to come to campus and hold in-person classes and networking events during a global pandemic.  However, it is neither guaranteed nor necessarily likely that this "attenuated chain of possibilities" would take place and that Mr. Garlick's alleged harms would be redressed by the relief sought.  *See Clapper v. Amnesty Int'l, USA*, 568 U.S. 398, 410 (2013); *Lujan*, 504 U.S. at 560–61; *New Mexico*, 854 F.3d at 1214–15.  Furthermore, the Court's ability to redress Mr. Garlick's alleged harm that he will struggle to "keep up with deadlines and absorb material" without "human connection and interaction" by granting the relief requested is purely speculative and not supported by the parties' filings.  *See* ECF No. 1 ¶ 224; *Lujan*, 504 U.S. at 561.

This case is distinguishable from *Valdez v. Grisham*, No. 21-2105, 2022 WL 2129071, at *3 (10th Cir. June 14, 2022), in which the Tenth Circuit held that a nurse had standing to challenge a New Mexico Public Health Order requiring COVID-19 vaccination for workers in congregate care facilities and hospitals through her substantive due process and equal protection claims because, there, the plaintiff did not qualify for any exemptions to the policy.  *See id.* at *1.  *But see id.* at *3–5 (affirming the district court's denial of a motion for a preliminary injunction because the plaintiff was not likely to succeed on the merits of her substantive due process and equal protection claims, given that the Public Health Order was "likely rationally related to a legitimate government purpose").  There, the Tenth Circuit observed that the plaintiff had standing because

"[e]njoining the [Public Health Order] would . . . lift the COVID-19 vaccine requirement and allow [the plaintiff] to work at a hospital or congregate care facility in New Mexico . . . without being fully vaccinated."  *Id.* at *3.  In contrast, here, exemptions are automatically given to students; Mr. Garlick received an exemption; and even if the UCD policy was lifted, his alleged harms would not necessarily be redressed.

For the reasons stated, Mr. Garlick's alleged harms do not establish that he has suffered an injury in fact caused by the policy that is redressable by the Court granting the relief requested.  *See Lujan*, 504 U.S. at 560–61; *New Mexico*, 854 F.3d at 1214–15. Hence, Mr. Garlick lacks standing, and the claims brought as to this Plaintiff must be dismissed without prejudice.  *See Brereton*, 434 F.3d at 1216, 1218.

### B.    Plaintiff Voelkelt

As for Ms. Voelkelt, the UCD policy provides that she would automatically receive a religious exemption if she ever sought one.  *See* ECF No. 38-22 at 2.  However, she never applied for a religious exemption; instead, she chose to voluntarily withdraw from her classes the day before the UCD policy went into effect and to decline to re-enroll in classes the following semester.  ECF No. 1 ¶ 252; ECF No. 38-24 (Def. Ex. X, Declaration of Carrie John, MA, UCD Associate Vice Chancellor for Enrollment and Academic Services) ¶ 28.  As noted above, since the filing of the Complaint, Ms. Voelkelt has further decided to "withdraw from CU Denver and attend a different school, as she cannot wait for CU to change its policy and therefore needs to go elsewhere to complete her degree." ECF No. 51 at 1; ECF No. 51-1 ¶ 3.  Regardless, Ms. Voelkelt's decision to attend a different school, which post-dates the Complaint, does not affect the Court's analysis

regarding her standing because, as stated above, *see supra* note 1, "[t]he existence of federal jurisdiction ordinarily depends on the facts *as they exist when the complaint is filed*." *Lujan*, 504 U.S. at 569 n.4 (emphasis in original).

For many of the same reasons that Mr. Garlick lacks standing, so does Ms. Voelkelt.  As stated above, Plaintiffs concede that "[i]f Students were exempted from the vaccine, but did not have to comply with the Extra Requirements, then there would be no injury and no standing."  ECF No. 45 at 11–12.  Here, Ms. Voelkelt withdrew from classes and declined to re-enroll and therefore is not subject to the vaccine requirement or the Extra Requirements.  Pursuant to Plaintiffs' own statement, she does not have standing.

Plaintiffs then argue that Ms. Voelkelt was injured by being "forced to defer her education in order to protect her constitutional rights," and they appear to argue that, even if she had remained enrolled, she would "not receive[] any of the intangible benefits that come from being on a college campus." *Id.* at 15.  However, she was not "forced," but rather voluntarily chose, to withdraw from classes, even though other options, such as the online learning that Mr. Garlick chose, were available to her.  This is likely a self-inflicted harm, presumably based on Ms. Voelkelt's fear of the hypothetical future harm of expulsion, which was neither impending nor likely to take place.  As Defendants point out, neither Ms. Voelkelt nor any Plaintiff has been threatened with expulsion. *See* ECF No. 47 at 15.  Ms. Voelkelt's voluntary decision to withdraw from classes was not "compel[led]" by the UCD policy and is not an injury in fact that is sufficient to confer standing. *See Clapper*, 568 U.S. at 416 ("[Parties] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is

not certainly impending."); *see id.* at 419 (noting that caselaw does not suggest that plaintiffs can "establish standing simply by claiming that they experienced a 'chilling effect' that resulted from a . . . policy that does not regulate, constrain, or compel any action on their part").

To the extent Ms. Voelkelt argues that if she had remained enrolled, she would have received an automatic exemption from the vaccine requirement but would have continued to take in-person, rather than online classes, and therefore still would have been subject to the Extra Requirements, this is likely a "chain of possibilities" that is too "attenuated" to establish standing. *See Clapper*, 568 U.S. at 410.  However, even if this "chain of possibilities" was not too "attenuated" to establish standing, the alleged harms Ms. Voelkelt would have faced from either enrolling in online classes or complying with the Extra Requirements, which are presumably similar to Mr. Garlick's alleged harms, do not constitute an "injury in fact" that would be redressable by a favorable decision here for many of the same reasons that Mr. Garlick's alleged harms do not.

If Ms. Voelkelt had remained enrolled and continued to take in-person, rather than online classes, and therefore was required to comply with the Extra Requirements, for similar reasons as stated above regarding Mr. Garlick, this does not establish an injury in fact:  First, the fine and imprisonment at issue in *Jacobson* is distinguishable from the automatic exemption to the vaccine policy and the masking and testing requirements in this case.  *See* 197 U.S. at 12.  Second, Ms. Voelkelt's desire to avoid the masking and testing requirements do not fall within the "zone of interests to be protected . . . by the  . . . constitutional guarantee in question."  *Valley Forge Christian Coll.*, 454 U.S. at 475; *see*

*also, e.g.*, *Celauro*, 548 F. Supp. 3d at 1040; *Whitfield*, 2021 WL 1964360, at *2; *Denis*, 538 F. Supp. 3d at 1081; *Ragsdale*, 540 F. Supp. 3d at 1218–19; *see also, e.g.*, *Klaassen*, 7 F.4th at 593.

If Ms. Voelkelt had remained enrolled and decided to take online, rather than in-person classes, in order to avoid having to comply with the Extra Requirements, Plaintiffs appear to argue that she would "not receive[] any of the intangible benefits that come from being on a college campus." ECF No. 45 at 15. However, as stated above regarding Mr. Garlick's alleged harms, it is neither guaranteed nor necessarily likely that the "attenuated chain of possibilities" that UCD would continue to hold in-person classes and networking events that individuals would attend "on [the] college campus" during a global pandemic, in the absence of a valid vaccine policy, would occur. *See Clapper*, 568 U.S. at 410; ECF No. 45 at 15. Therefore, the hypothetical alleged harms to Ms. Voelkelt from attending online classes instead of in-person classes is speculative, and enjoining the policy would not likely redress any such harm. *See Clapper*, 568 U.S. at 410; *Lujan*, 504 U.S. at 560–61; *New Mexico*, 854 F.3d at 1214–15. In addition, this case is distinguishable from *Valdez*, as discussed above. *See* 2022 WL 2129071, at *1–3. In contrast to that case, here, exemptions to the vaccine requirement are automatically given to students, so Ms. Voelkelt would have received an exemption if she had ever requested one; in addition, even if the UCD policy was lifted, the hypothetical alleged harms from Ms. Voelkelt enrolling in online learning instead of attending in-person learning while complying with the Extra Requirements would not necessarily be redressed.

Defendants make additional arguments why Ms. Voelkelt lacks standing.  *See* ECF No. 47 at 15–17.  Although Plaintiffs do not, themselves, meaningfully raise these grounds for Ms. Voelkelt's standing, *see* ECF Nos. 45, 48, the Court "ha[s] an independent obligation to determine whether subject-matter exists" where there are standing issues and therefore will address these additional arguments.  *See Collins v. Daniels*, 916 F.3d 1302, 1314 (10th Cir. 2019) (quoting *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006)).  First, Defendants argue that Ms. Voelkelt's "only apparent injury is the requirement to report her vaccination status."  ECF No. 47 at 15; *see also* ECF No. 1 ¶ 29 ("For CU Denver, students . . . were required to . . . self-disclose their vaccination status by August 27, 2021.").  However, as Defendants point out, Ms. Voelkelt does not have to report her status because "[i]ndividuals who do not provide proof of vaccination will be considered as having submitted a personal exemption," which are automatically granted.  ECF No. 38-22 at 2; ECF No. 47 at 15.  Furthermore, as Plaintiffs admit in the Complaint, "CU Denver can also confirm vaccination status with the Colorado Department of Public Health & Environment," ECF No. 1 ¶ 31, but the Plaintiffs do not raise a constitutional challenge to the practices of the Colorado Department of Public Health & Environment.  *See Lujan*, 504 U.S. at 560 ("[T]he injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.") (internal quotations, alterations, and citations omitted).

Second, Plaintiffs allege in the Complaint that Ms. Voelkelt "had received the Provost's Scholarship . . . but as a result of being forced to defer, it appears that Ms. Voelkelt may have lost that scholarship" and that "[i]f she is not re-enrolled . . . , CU will

consider her inactive and she would need to re-apply and be re-admitted."  ECF No. 1 ¶¶ 253–54; *see also* ECF No. 48 at 11 ("Unless CU removes the vaccine mandate, [Ms. Voelkelt] will lose both her scholarship and would need to reapply . . . .").  Defendants argue that these harms do not confer standing.  ECF No. 47 at 16–17.  To the extent Plaintiffs may claim that Ms. Voelkelt's possible loss of her scholarship and need to reapply to UCD are the harms at issue, as stated above, Ms. Voelkelt was not "forced" to defer or withdraw from UCD by the policy at issue, and her decision to do so appeared to be self-inflicted "based on [her] fears of hypothetical future harm that is not certainly impending," in the form of expulsion that was never threatened.  *See Clapper*, 568 U.S. at 416.  Ms. Voelkelt's voluntary decision to withdraw from UCD, which was not "compel[led]" by the policy, breaks any causal connection between the UCD vaccine policy and the possible loss of her scholarship or requirement to re-apply.  *See id.* at 419.

For the reasons stated, Ms. Voelkelt's alleged harms do not establish that she has suffered an injury in fact caused by the policy that is redressable by the Court granting the relief requested.  *See Lujan*, 504 U.S. at 560–61; *New Mexico*, 854 F.3d at 1214–15. Hence, Ms. Voelkelt lacks standing, and the claims brought as to this Plaintiff must also be dismissed without prejudice.  *See Brereton*, 434 F.3d at 1216, 1218.

### C.    Plaintiff Fow

Dr. Fow alleges that on September 9, 2021, he received a rejection of his application for a religious exemption to the Anschutz vaccine policy and that he subsequently was informed that he was no longer allowed to access the campus.  ECF No. 1 ¶¶ 238–44.  On September 24, 2021, he received an email from the Dean of the

School of Dental Medicine stating that the Dean "concurr[ed] with" the recommendation of the School of Dental Medicine Student Performance Committee that Dr. Fow be "put on a leave of absence in the event [he] chose not to be vaccinated" and that "[i]f by Tuesday, September 28, 2021, [he] ha[d] not shared evidence of vaccination with a first dose of the COVID-19 vaccination, [he] w[ould] be disenrolled from all School of Dental Medicine course work in the Graduate Periodontics program, and patient care." *Id.* ¶ 244. Plaintiffs argue that Dr. Fow has suffered an injury in fact because he has not been allowed to continue enrollment in his program.  ECF No. 45 at 10–11; ECF No. 48 at 9. However, he concedes that it "is unclear whether he has been disenrolled from the school or is on a one-year personal leave," ECF No. 1 ¶¶ 243–47, and therefore there is a "fog" regarding his status, ECF No. 45 at 10.  Regardless, even assuming, without deciding, that Dr. Fow could demonstrate an injury in fact to establish standing based on these facts, he has not demonstrated the requisite elements of a causal connection between his alleged injury and the Anschutz policy (showing that the injury is "fairly traceable to the challenged action of the defendant") or the redressability of his alleged injury by this Court.  *See Lujan*, 504 U.S. at 560–61 (internal quotations and alterations omitted); *New Mexico*, 854 F.3d at 1214–15.

The Amended Anschutz Policy ensures the University's compliance with federal regulations that the Supreme Court has upheld, *see Biden*, 142 S. Ct. at 653–55, as well as Colorado state regulations.  *See* 42 C.F.R. § 482.42(g); 86 Fed. Reg. 61555–61619 (2021); 6 Colo. Code Regs. §§ 1011-1:2-12.2.1, 12.2.2(A).  No governmental entities responsible for the federal or state regulations are named in this action, and those

regulations are not challenged.   "[T]here is no traceability [i.e., causal connection] if the plaintiff's injury is 'the result of the independent action of some third party not before the court.'"   *Lawrence v. Polis*, 505 F. Supp. 3d 1136, 1149 (D. Colo. 2020) (Domenico, J.) (quoting *Bennett v. Spear*, 520 U.S. 154, 167 (1997)); *see also Clapper*, 568 U.S. at 414; *Lujan*, 504 U.S. at 560.

Further, the alleged harm is not redressable by this Court where the Amended Anschutz Policy is required by both valid federal regulations that have been upheld by the Supreme Court, *see Biden*, 142 S. Ct. at 654–55, and similar state regulations.  According to Defendants, "no federal law **requires** Anschutz to provide religious exemptions to students."  ECF No. 47 at 22 (emphasis added).  On the other hand, Plaintiffs argue that "the redress Dr. Fow seeks would not put CU in violation of Federal or State regulations" because "[n]either the Colorado Regulation nor the Federal **prohibits** the offering of religious exemptions."  ECF No. 45 at 17–18 (emphasis added).  However, as Defendants point out, the redress Plaintiffs seek is not merely to amend the policy to allow students like Dr. Fow to take advantage of the same religious exemption policy that is extended to employees.  Instead, Plaintiffs request that this Court declare the policies, in their entirety, to be "unconstitutional on [their] face" and "unconstitutional as applied to each Plaintiff," as well as enjoin the policies' enforcement "on [their] face or as applied."  ECF No. 1 ¶¶ 360–62.  This redress cannot be granted by the Court without contravening federal regulations that have been upheld by the Supreme Court.  *See Biden*, 142 S. Ct. at 653 ("[T]he Secretary [of Health and Human Services] did not exceed his statutory authority in requiring that, in order to remain eligible for Medicare and Medicaid dollars, the facilities

covered by the interim rule must ensure that their employees be vaccinated against COVID-19.").

Moreover, even if Dr. Fow were seeking only the narrow redress of amending the policy to extend the religious exemption that is currently only permitted for employees to students like Dr. Fow, Plaintiffs argue that this would "allow Dr. Fow to continue his education under the **very exemption that the [D]HHS [Vaccine] Mandate allows**." ECF No. 45 at 17 n.5 (emphasis added); *see also* ECF No. 48 at 13–14. However, as Defendants point out, if the religious exemption that is currently in place for Anschutz employees, pursuant to the DHHS Vaccine Mandate, were to be extended to students like Dr. Fow, that would mean that he would be subject to the same process for evaluating and granting those exemptions.

Pursuant to that process, the HR Principal Professional at Anschutz would still have to "work with [Dr. Fow's] supervisor[s] to evaluate whether an accommodation is possible, based on [his] position and job duties, without undue hardship to the University." ECF No. 38-6 ¶ 6; *see also* ECF No. 47 at 22. Also pursuant to that evaluation process, "[p]ermitting an unvaccinated individual to work in-person creates an undue hardship on the University because it threatens the health and safety of the University's patients, employees, students, and community." ECF No. 38-6 ¶ 6. So, a religious accommodation request like Dr. Fow's would only be approved "if the employee's duties can be modified to prevent any in-person interaction with the campus community or if the employee's job duties can be performed 100% remotely." *Id.* ¶ 7. "For those employees whose job duties require in-person interaction, the accommodation request is denied."

*Id.* Here, "Dr. Fow's graduate degree in periodontics requires significant clinical hours of direct patient contact with particularly at-risk, ill, elderly patients" and "[h]is program cannot be modified to prevent patient interaction."  ECF No. 47 at 23 (citing ECF No. 38-21 ¶¶ 27–28).  Therefore, even if the Court were to grant the redress of modifying the Amended Anschutz Policy such that the religious exemption process currently in place for employees would also apply to students like Dr. Fow, this likely would not remedy his alleged harm at issue here, which is necessary to establish standing.  *See Lujan*, 504 U.S. at 560–61; *New Mexico*, 854 F.3d at 1214–15.

For the reasons stated, Dr. Fow's alleged harms do not establish that he has suffered an injury in fact caused by the policy that is redressable by the Court granting the relief requested.  *See Lujan*, 504 U.S. at 560–61; *New Mexico*, 854 F.3d at 1214–15. Hence, Dr. Fow lacks standing, and the claims brought as to this Plaintiff must also be dismissed without prejudice.  *See Brereton*, 434 F.3d at 1216, 1218.

## IV.  CONCLUSION

For the reasons stated above, the Court's Order to Show Cause, ECF No. 43, is MADE ABSOLUTE, and this case is DISMISSED WITHOUT PREJUDICE for lack of jurisdiction.

DATED:  January 11, 2023

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge